GOULD STORAGE BATTERY CORPORATION, A CORPORA-
TION, PETITIONER, v. UNITED ELECTRICAL, RADIO
AND MACHINE WORKERS OF AMERICA, LOCAL NO.
108, DEFENDANT.

Submitted April 9, 1948.—Decided August 24, 1948.

Before Justice BURLING.

For the petitioner, *Katzenbach, Gildea & Rudner* (*William V. Lee* (*Kenneth Souser,* of the Pennsylvania bar), of counsel).

For the defendant, *Louis H. Wilderman.*

BURLING, J. This is an application for an order directing the parties to arbitrate certain provisions of a collective bargaining agreement. It is made pursuant to the statute of

this state relating to arbitration and award under the procedure prescribed in *R. S.* 2:40–12 which reads as follows:

"A party aggrieved by the failure, neglect or refusal of another to perform under a written agreement providing for arbitration, may petition a justice of the supreme court or judge of a circuit court for the county where either party resides, for an order directing that the arbitration proceed in the manner provided for in the agreement. Five days' notice in writing of the application shall be served personally upon the party defaulting."

The facts have been stipulated and so far as they are necessary to a determination of the question are as follows:

Prior to June 28th, 1947, the plant or factory which is now owned and operated by the petitioner, was owned and operated by the Philco Corporation. On or about May 6th, 1947, the Philco Corporation and the defendant Union entered into a collective bargaining agreement containing certain terms and provisions as to the wages, hours and working conditions of the employees in said plant or factory represented by the Union.

On or about June 28th, 1947, the petitioner purchased said plant or factory from the Philco Corporation and shortly thereafter entered into a verbal agreement with the defendant Union to assume the rights and obligations of the Philco Corporation as the employer of said employees under such agreement. This verbal agreement was confirmed by letter dated July 16th, 1947, and accepted by the defendant Union on the same date. Said agreement of May 6th, 1947, as assumed and accepted by the petitioner, now continues in full force and effect.

The collective bargaining agreement of May 6th, 1947, provides in Article XVIII thereof as follows:

"Section 1. Nothing herein contained shall subject the following matters to arbitration; namely wages, hours. Union recognition, strikes, slow-down, stoppage of work or lockout.

"Section 2. The Union will under no circumstances condone any strike, stoppage or slow-down. It will at no time instigate such a strike, stoppage or slow-down. The Company will not at any time lock out any of its Union employees.

"Section 3. The Union agrees that all workers deliver 7 2/3 hours of continuous work per eight (8) hour work day in the departments receiving wash-up time, and a full eight (8) hour day from all other departments."

It contained the following further provision as Section 1, Article XVII:

"Section 1. All matters in controversy or dispute shall first be taken up by and between representatives of the Company and the Union. In the event they are unable to agree, the matter shall be submitted as expeditiously as possible to the arbitrator. The arbitrator's decision shall be final and binding on both parties."

The number of employees of the petitioner who are represented by the defendant Union and to whom said collective bargaining agreement is applicable is approximately 300. Of these approximately 150, who will be referred to hereinafter collectively as the "incentive employees" are employed under an incentive method of pay. Under this method the rates of the incentive pay are determined in terms of quota of production or output per day. Said quotas were pre-determined on the basis of study and observation of the normal time and effort required to perform a given operation in the plant at the time of making the contract.

From time to time representatives of the Company and of the Union met in order to establish quotas of production or output and rates of incentive pay for newly created jobs, but the Union refused to make a revision of the quotas of production or output for existing jobs.

The petitioner desires to arbitrate the revision of the work quotas claiming that at the present time the obligation on the part of employees to deliver a full day's work under Article XVIII, Section 3 of the contract is not being met. It is petitioner's contention that the existing standards are such that an employee may finish his quota for maximum incentive pay in less than eight hours.

The defendant Union contends that any revision of incentive quotas necessarily involves the question of wages. In this respect, it is correct. The contract is clear in that under Section 1 of Article XVIII if the matter of wages is to be

altered, it is the subject-matter of novation by collective bargaining.

The petitioner insists that the function of the arbitrator will be confined to determining the meaning of the language of Section 3 of Article XVIII and will have no relation to wages. Under a wage system whereby the pay of the workers is affected by the units of work produced it is unrealistic to insist this standard may be altered without affecting wages.

The obligation upon this part of the employee is plain and emphatic to deliver prescribed hours of continuous work. If it is a fact that the incentive pay may be earned in less than 7-2/3 hours in one department and eight hours in other departments, the obligation remains with the employee to continue assiduously with his work to fairly earn the basic rate of pay for the additional period because the Union has contracted that "it will under no circumstances condone any * * * slow-down." Continuous work is job performance during a specified whole day.

The petitioner must have had some knowledge that the situation of which it complains was not impossible as the present contract differs significantly from the prior contract of December 5th, 1945, by the omission of the Union's agreement that all tasks were to be restudied and reset. The collective bargaining agreement preceding the agreement dated May 6th, 1947, was dated December 5th, 1945. That agreement contained the following provision:

"The Union agrees that all tasks are to be restudied and reset on a fair basis and further agrees that all workers deliver seven and two third (7 2/3) hours of continuous work per eight hour work day in the department receiving wash-up time and a full eight-hour day from the workers in all other departments."

Having acquiesced in this change by the present contract by its omission, the petitioner cannot now seek to alter it by invoking the aid of this court. The contract is clear and leaves nothing to arbitrate within its terms.

It is advisable that the scale of incentive pay shall relate to the normal time and effort required to *currently* perform a given operation in order to stimulate increased production.

If that is not so, the manner to provide for such a condition should have been in the terms of the contract. If the company desires to excite a higher degree of production, then the avenue of collective bargaining is open.

The parties have written this contract specifying therein certain situations in which arbitration is denied. This court has the right to order arbitration under the statute when the contract so provides. *United Electrical, Radio and Machine Workers of America, Local* 411, *C. I. O.* v. *National Pneumatic Co.* (*Supreme Court,* 1946), 134 *N. J. L.* 349. However it will not vary the terms of an existing contract nor will it write a new one for the parties. That was the decision of this court in *United Electrical, Radio and Machine Workers of America, C. I. O. Local* 420 v. *Walter Kidde, &c., Inc.* (*Supreme Court,* 1948), 136 *Id.* 544, and the principle is applicable to the present case.

The petition is accordingly denied.