[Civ. No. 20480.   Second Dist., Div. Three.   Mar. 25, 1955.]

SOUTHSIDE THEATRES, INC., Respondent, v. MOVING PICTURE PROJECTIONISTS, LOCAL 150, I.A.T.S.E., A. F. of L. (an Unincorporated Association), Appellant.

Gilbert, Nissen & Irvin for Appellant.

William R. Walsh for Respondent.

SHINN, P. J.—This is an appeal by the Moving Picture Projectionists Local 150, I.A.T.S.E., A. F. of L. (hereinafter referred to as the Union) from a judgment vacating an award

of arbitrators and from minute orders which denied appellant's motion for reconsideration of the judgment. The respondent is Southside Theatres, Inc. (hereinafter referred to as Southside) which owns and operates several motion picture theatres, the operation of three of which for the projection of three-dimensional pictures was and is the subject of the present controversy.

On or about October 1, 1952, contracts (hereinafter referred to in the singular) were entered into between Southside and the Union covering the wages, hours and working conditions of projectionists. By its terms the agreement was made retroactive to July 1, 1951. Prior to October 1, 1952, Southside was exhibiting only "flat" pictures. It is stated by the Union and not questioned by Southside that three-dimensional or "3-D" pictures were first shown in the jurisdiction of the Local November 25, 1952. Southside commenced exhibiting 3-D pictures on or about June 2, 1953. A controversy arose whether Southside could be required to employ an extra projectionist. The Union's brief says: "The dispute continued for some weeks. It was contended by the Union that the projection of 3-D pictures required the employment of an extra projectionist, while on the other hand Southside contended that the collective bargaining agreement between the parties did not so require when 3-D pictures were exhibited without the use of additional sound tracks, and that the only times the Union could demand an extra projectionist was under circumstances provided for in clauses 11 and 12 of the collective bargaining agreement."

The contract provided in paragraph 38 for arbitration in accordance with the established procedure of the American Arbitration Association.[1] On or about July 20, 1953, Southside made a demand upon the Union for arbitration in accordance with paragraph 38. A copy of the demand was filed with the American Arbitration Association. The demand stated that the Union had required Southside to employ an additional projectionist for 3-D pictures during June and July 1953 at a cost to Southside of $548.17 in additional wages. The relief sought through arbitration was: "(a) a *declaration*

---

[1]"38. Any dispute, claim or grievance arising out of the agreement between the parties shall be settled by arbitration in accordance with the rules, then obtaining, of the American Arbitration Association. The arbitration shall be conducted and the award made by a board of three arbitrators, one of whom shall be named by the Local, one by the Employer and the third, who shall be chairman, shall be selected pursuant to the rules of the American Arbitration Associates."

that the employer is not required under the terms of said contract to employ an extra projectionist when exhibiting a 3-dimension picture without additional sound tracks; (b) an order requiring Local #150 to *cease and desist* from requiring the employment of an extra projectionist . . . ; (c) *reimbursement* to the employer from Local #150 for . . . sums required to be paid as wages . . .'' Each of the parties named an arbitrator and when those selected were unable to agree upon a third to act as chairman, the arbitration association, when appealed to, named a chairman.

At the commencement of the hearing before the panel December 12, 1953, the Union made a motion to dismiss the demand for arbitration upon the ground that the projection of 3-D pictures was not covered by the collective bargaining agreement of the parties nor within their contemplation at the time the agreement was entered into. From this premise the Union contended that the dispute was not one ''arising from the contract.'' Southside resisted the motion, contending that it went to the merits of the controversy, the dispute being whether the contract covered all the operations of the theatres, including operations that might be undertaken thereafter, and therefore defined the respective rights and duties of the parties under the conditions created by the advent of 3-D pictures.

The Union's motion was based in part upon affidavits, one by the business manager of the projectionists' union which averred that in the negotiations leading up to the contract no mention was made of 3-D pictures nor of anything but flat pictures. The other affidavit of the chairman of the negotiating committee of the Southern California Theatre Owners Association was to the effect that in the negotiation of identical contracts on behalf of many other theatres covering the period February 1952 to January 1954 no mention was made of 3-D pictures. Thus the Union submitted with its motion extrinsic evidence respecting the construction that should be given the contract.

By its motion the Union took the position, which it has since maintained, that as a matter of fact the contract did not cover projection of 3-D pictures, and hence there was no arbitrable question whether it covered 3-D pictures—an obvious *non sequitur*.

It is clear that the controversy arose out of the contract. The basic dispute was over the scope of the contract. If it covered the projection of 3-D pictures the provisions respect-

ing the employment of additional projectionists were controlling. If it did not cover the exhibition of 3-D pictures that matter was subject to settlement through a new or supplemental agreement. The basic question was submitted to the aribitrators by means of the Union's motion to dismiss and Southside's opposition. The arbitrators were required to decide the question and by their award to determine the scope of the contract. That was the initial decision the parties insisted upon. If Southside should prevail upon that issue it would contend that the Union could demand employment of an additional projectionist only in accordance with the terms of the contract. If the Union should prevail on the basic issue, an award to that effect would leave it free to insist upon a new or supplemental agreement settling the 3-D picture dispute.

A majority of the arbitrators signed an opinion, the substance of which was a statement of their conclusion that the contract did not encompass the exhibition of 3-D pictures and that the parties did not, at the time the contract was entered into, contemplate or intend that it should constitute the measure of their respective rights or duties under the circumstances and conditions that came into being when Southside commenced exhibition of 3-D pictures. This conclusion was responsive to the issue that was tried and an award consistent with the conclusion of the arbitrators would settle the controversy.

The majority opinion, after pointing out that the contract was silent as to 3-D pictures, stated: ''We therefore find that there is no arbitrable subject arising out of the existing contract to justify arbitration under clause 38 of the contract,'' and they made an award which read in material part: ''We, the undersigned arbitrators—arbitrators—having been duly sworn and having duly heard the proofs and allegations of the parties, award as follows: The motion to dismiss the demand for arbitration is granted. Therefore the claim of Southside Theatres, Inc., is denied.'' Costs were assessed against Southside. The third arbitrator filed a dissenting opinion stating the view that the contract covered projection of 3-D as well as flat pictures and that the demand of the Union was not in conformity with applicable contract provisions.

Although the Union in appointing an arbitrator purported to act ''specially'' and later objected to the jurisdiction of the arbitrators upon the ground that no arbitrable dispute existed, it nevertheless joined with Southside in submitting

to the arbitrators the basic question as to the scope of the contract which, as it turned out, was, in the opinion of a majority, the determinative question. The ground of the Union's objection was that since the contract did not cover 3-D projection the controversy did not arise out of the contract, but, as we have said, the premise did not lead to the conclusion. The dispute as to the scope of the contract arose out of the contract and it arose in no other manner.

It cannot be doubted that when the Union took the position that no arbitrable controversy existed Southside could have petitioned the superior court for a determination of that question in accordance with the procedure authorized by section 1282, Code of Civil Procedure. However, the parties voluntarily submitted to the arbitrators the question whether the controversy arose out of the contract. This was their privilege. They introduced their evidence as to the meaning and scope of the contract and they sought an award of the arbitrators upon that issue. The Union says: "The arbitrators did not exceed their powers by deciding that the disputed claim herein arose outside of the collective bargaining agreement between these parties." This is to say that the arbitrators acted within their powers in undertaking to make a determination as to the scope of the contract. Southside upon this question says: "The Southside's position was that the employment of projectionists being the object of the collective bargaining agreement, that any dispute concerning their employment 'arose out of the agreement,'" and cites *Royal Typewriter Co.* v. *Mechanical & Elec. Workers Union*, 104 N.Y.S.2d 332. The question in that case was whether servicemen on electric typewriters were within the general classification of the contract of "Service Department Employees," the disagreement having arisen from the fact that when the contract was made the company was not making electric typewriters. In denying the application of the company to stay arbitration proceedings the court said: "The only issue before the court, however, is whether the union's stated question in controversy calls for an interpretation or application of any provision of the agreement. The court should not interpret whether the contract covers service men working on electric typewriters. That should be left to the Arbitration Board. There is an arbitrable issue."

█ Any controversy under a collective bargaining contract which requires first a determination that the contract does or does not define the rights or duties of the parties in

an existing situation is subject to arbitration if the agreement provides for the arbitration of disputes that arise out of the contract.

The foundational questions are: What was submitted to the arbitrators and what did they decide? There was in reality but a single factual question submitted for decision, namely, whether the parties understood and intended that the contract should cover operations of the theatre as to which it was silent. An affirmative answer to that question would have brought the proceeding to the further question whether the new operations created conditions in which the Union could properly demand employment of an additional projectionist. A negative answer would end the entire controversy; and a negative answer was given.

The claim of the theatre was denied by the award. That decision was a valid one if the arbitrators had the power to make it; and they had the power to make it under the submission and the evidence. It is immaterial that the decision was made on a motion to dismiss and likewise immaterial that the majority opinion stated there was no arbitrable dispute. The real decision was that the parties did not intend the contract to cover 3-D projection. That was the issue that was tried and it was so stated in the majority opinion and in the dissenting opinion. It is true that the award should have made a declaration as to the scope of the contract, thus expressly removing all doubt as to the ground upon which the demand of the theatre was denied. But that ground is clearly implied from the fact that no other question was submitted, and, of course, the implication is fortified by the opinions. The statement of the majority opinion that there was no arbitrable dispute was merely an erroneous reason for granting the motion to dismiss. The fact is that the demand of the theatre was denied because it was determined that the contract did not cover 3-D projection. Arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision. (*McKay* v. *Coca Cola Bottling Co.*, 110 Cal.App.2d 672 [243 P.2d 35].) The reason for the award was the one we have stated and it admitted of no disposition other than a denial of the demand of Southside Theatres.

The judgment is reversed with instructions to confirm the award. The appeal from the orders is dismissed.

Wood (Parker), J., and Vallée, J., concurred.