[Civ. No. 23563. Second Dist., Div. Two. Apr. 13, 1959.]

PARI-MUTUEL EMPLOYEES' GUILD, LOCAL 280, BUILDING SERVICE EMPLOYEES INTERNA-TIONAL UNION, Appellant, v. LOS ANGELES TURF CLUB, INC. (a Corporation) et al., Respondents.

· David Sokol for Appellant.

O'Melveny & Myers, Freston & Files and Oakes & Horton for Respondents.

ASHBURN, J.—Petitioner Pari-Mutuel Employees' Guild, Local 280, Building Service Employees International Union, appeals from a judgment entered pursuant to the court's denial of its petition for an order directing arbitration under a collective bargaining agreement between petitioner and Los Angeles Turf Club, Inc., Hollywood Turf Club and several other Turf Clubs operating in this state. The judgment provides that the petition be denied and petitioner recover nothing.

Appellant is a labor union which, for collective bargaining purposes, represents those employees of the respondents who work in the pari-mutuel department. Their duties are to sell pari-mutuel tickets, cash the same, assist in calculating wagering odds and perform related activities. The parties have had a collective bargaining agreement for many years. The one now before us became effective on September 16, 1957, and extends to September 16, 1960.

Certain employees of respondents, members of the union, work in jobs classified as "Machine Supervisor A" and "Machine Supervisor B." Their duties, as set forth in the job descriptions of the bargaining agreement, are to supervise machines, distribute paper to machines and sell tickets on each race.

The collective bargaining agreement describes these jobs as follows:

"MACHINE SUPERVISOR B: This supervisor comes in early, generally in the morning, and, supervises machines. He shall be assigned to a selling window each day and sell tickets each race.

"MACHINE SUPERVISOR A: This employee has control of a cabinet in charge of line, distributes paper to machines and codes. He is general supervisor over other supervisors. He shall be assigned to a selling window each day and sell tickets each race.

"The job descriptions described herein are not all inclusive. They set forth only the primary duties of the employees listed

and are to be used as a guide in classifying said employees. The parties agree that variations may arise as determined and directed by the Mutuel Manager.''

The rates of daily pay are specified as follows:

| | "Aug. 1 '57 to July 31, '58 | Aug. 1 '58 to July 31, '59 | Aug. 1 '59 to End of Cont. |
|---|---|---|---|
| " . . . . . . . . | . | . | . |
| "Machine Supervisor A......... | 29.60 | 30.60 | 31.60 |
| "Machine Supervisor B......... | 27.60 | 28.60 | 29.60 |
| " . . . . . . . . | . | . | . |

Section 1 of article VI of the agreement says: ''The rates of pay and job descriptions attached to this Agreement are incorporated herein and made a part of this Agreement. It is agreed that the rates of pay set forth in the wage schedule and classifications attached hereto and made a part hereof shall be the agreed compensation for work performed in one (1) working day during the racing season regardless of the hours required to perform such work, and that employees working in classifications set forth therein are entitled to no overtime payment, 'One Day' as used herein means a racing day of eight (8) races or fewer.''

Section 6 of article II says: ''It is the intention of the parties that all employees shall do a reasonable day's work. Any question of undue burden on any individual shall be referred for review and decision to the Labor-Management Committee established in Article IV of this Agreement.''

Under article IV the labor-management committee has the duty of reviewing and rendering a decision, within 10 days, of all matters submitted to it and its decision is declared to be binding upon the union, its members, and the employer. In case of disagreement the matter must be submitted to arbitration as provided in article V. That article contains familiar provisions for processing grievances submitted to arbitration; also the following: ''The arbitrator shall not modify, vary, change, add to, or remove any terms or conditions of this Agreement.''

In November, 1957, appellant union notified respondents that it felt an undue burden was being imposed on machine supervisors by their assignment to ticket selling windows. The labor-management committee held a meeting to consider the alleged grievance but no decision was reached. Appellant then made a written request for arbitration.

This having failed to eventuate the union filed its petition

for an order directing arbitration which alleges: "That a dispute between the parties arose over the assignment of machine supervisors to selling windows, and on February 25, 1958 the parties agreed to submit the same to David Ziskind, selected as the arbitrator; a copy of said agreement to so submit is attached as Exhibit 'B' and made a part hereof." Said proposed agreement, Exhibit "B" states: "Now, therefore, it is mutually agreed by the parties that the issue to be submitted to arbitration is as follows: Does the assignment of machine supervisors to selling windows to sell tickets constitute an undue burden on such supervisors?" In response to this allegation of the petition respondents alleged that the parties "tentatively agreed orally that said dispute could be submitted to David Ziskind, as Arbitrator, provided the parties were unable to settle such dispute by negotiation, and provided further that petitioner could and did present a grievance that was arbitrable under said Agreement." Also that the purported agreement, Exhibit "B," "was withdrawn by respondents before it was accepted by Petitioner." To this was added: "And respondents particularly deny that there could be an arbitrable dispute between the parties over the assignment of Machine Supervisors to selling windows as alleged in Paragraph IV of said Petition in that said Collective Bargaining Agreement specifically provides that a Machine Supervisor 'shall be assigned to a selling window each day and sell tickets each race.' "

The trial court found that said dispute did arise; that none of respondents was in default under the arbitration provisions of the collective bargaining agreement; that that agreement specifically provides "that a Machine Supervisor shall be assigned to a selling window and sell tickets each race"; that article V, covering arbitration, provides "that the arbitrator shall not modify, vary, change, add to or remove any terms or conditions of said Collective Bargaining Agreement"; that the proposed submission agreement attached to the petition as Exhibit "B" was withdrawn and revoked by respondents before its acceptance by petitioner and before any notice of acceptance was mailed to respondents; that the collective bargaining agreement is the only written agreement between the parties for arbitration of disputes. Among its conclusions of law the court stated: "4. Petitioner is not entitled to an order directing arbitration under said Collective Bargaining Agreement concerning the assignment of Machine Supervisors to selling windows. 5. Petitioner's petition for an order directing

arbitration should be denied because none of the Respondents are in default under any written agreement to arbitrate.'' Appellant's counsel construes this to be a ruling ''that there was no arbitrable issue before the Court and that the submission agreement had been withdrawn.'' We think this a correct interpretation of the ruling,—that absence of arbitrability is an implied subsidiary finding.

It should be noted at the outset that no undue burden upon any individual machine supervisor is asserted. The claim, raised just two months after the bargaining agreement was consummated, is that assigning machine supervisors to selling tickets was an undue burden upon them as a class. The contract expressly provides that they shall perform such services and that no arbitration shall result in a modification, variance, change in, addition to or removal of any terms or conditions of the contract by the arbitrators. The following observations of *Texoma Natural Gas Co.* v. *Oil Workers Intl. Union*, 58 F. Supp. 132, 148,[1] are pertinent: ''I am firm in the view that Article XI, dealing with *complaints,* relates wholly to *individual* complaints and grievances, to the right of each individual to *the protection accorded him by the provisions of the contract.* It has no relation whatever to the possible desire of one or many employees for *changes in the contract. . . .*

''These are all appropriate measures for securing to the individual employee his *rights under* the contract, but wholly inappropriate steps for obtaining *amendments to,* or *modifications of,* the contract—that would be a matter for collective bargaining. . . . Many other examples could be cited reflecting the distinction between the protection through complaint machinery of the *rights of the individual employee,* granted by the contract, and the amendment of the contract through negotiation [Emphasis by the court.]

''The contract between the parties was evidently made for the purpose of being followed. Doubtless in the course of bargaining each gave and each took. At any rate, it was entered into, and must be followed. I cannot believe that it was intended that if some or all of the employees became dissatisfied with some provision, the contract would be subject to amendment by a third party or three third parties acting as 'arbitrators.' Arbitration under an existing contract and negotiations for the amendment of a contract are entirely different functions. The Company cannot be forced, through

---

[1]Affirmed on other grounds (C.A. 5th), 146 F.2d 62; cert. den. 324 U.S. 872 [65 S.Ct. 1017, 89 L.Ed. 1426].

intervention of arbitrators, into an amendment of the contract. If, therefore, the subject matter of the differences between the parties is fully covered by the contract, those differences are not within the complaint and grievance provisions of the contract, and are not arbitrable under the arbitration provisions; and if they are not arbitrable it is obvious that in attempting to arbitrate non-arbitrable matters the arbitrators have exceeded their jurisdiction, and their award is void."

Had there been an arbitration in this instance it must have resulted adversely to appellant for the jurisdiction of arbitrators is limited by the collective bargaining agreement to action which does not change the terms of the agreement. Any order that machine supervisors be not assigned to selling windows each day, or be not required to sell tickets each race, would be directly opposed to the terms of the agreement and hence in excess of the jurisdiction of the arbitrators. (*Drake* v. *Stein*, 116 Cal.App.2d 779, 785 [254 P.2d 613]; *Crofoot* v. *Blair Holdings Corp.*, 119 Cal.App.2d 156, 184 [260 P.2d 156]; *Flores* v. *Barman*, 130 Cal.App.2d 282, 287 [279 P.2d 81]; *O'Malley* v. *Petroleum Maintenance Co.*, 48 Cal.2d 107, 110 [308 P.2d 9].)

Section 1282, Code of Civil Procedure,[2] under which this proceeding was brought, requires the court to determine initially whether the existence of a written agreement for arbitration is in issue and whether respondent is in default with

---

[2] Code Civ. Proc., § 1282: "A party aggrieved by the failure, neglect or refusal of another to perform under an agreement in writing providing for arbitration may petition any superior court of the county or city and county where either party resides, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of the hearing of such application shall be served personally upon the party in default. The court shall hear the parties, and upon being satisfied that the making of the agreement or such failure to comply therewith is not in issue, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the agreement or the default be in issue an order shall be made directing a summary trial thereof. Where such an issue is raised, the party alleged to be in default, may, on or before the return day of the notice of application, demand a jury trial of such issue, and if such demand be made, said court shall make an order referring the issue or issues to a jury called and impaneled in the manner provided for the trial of actions at law. If no jury trial be demanded said court shall hear and determine such issue. If the finding be that no agreement in writing providing for arbitration was made, or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the finding be that a written provision for arbitration was made and there is a default in proceeding thereunder, an order shall be made summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

respect to performance: "If the finding be that no agreement in writing providing for arbitration was made, or that there is no default in proceeding thereunder, the proceeding shall be dismissed."

Appellant does not argue that the evidence is insufficient to support the finding that the proposed arbitration agreement (Exhibit B) never became effective because the minds of the parties did not meet thereon. On the contrary, the opening brief says: "There is a basic conflict in the affidavits on file on the issue of whether or not Respondents did in fact revoke the submission agreement before it was accepted by the Union."

The real contention of appellant is that the question of arbitrability should have been determined by arbitrators appointed pursuant to the collective bargaining agreement in view of the contract provision requiring arbitration of all grievances. Reliance is placed upon this language of section 1 of article V: "All grievances hereunder, except as provided elsewhere herein, shall be processed in the following manner."

As a general rule, the question of the existence of an agreement to arbitrate and of the scope of the arbitration permissible thereunder are issues which, in the first instance, the code refers to judicial action. (Code Civ. Proc., § 1282; *Wetsel* v. *Garibaldi*, 159 Cal.App.2d 4, 7, 8 [323 P.2d 524].) See also *Fischer* v. *Superior Court*, 105 Cal.App. 466, 470 [287 P. 556]; *Doyle* v. *Hunt Construction Co.*, 123 Cal.App.2d 51, 54 [266 P.2d 152]; *Southside Theatres, Inc.* v. *Moving P. etc. Local*, 131 Cal.App.2d 798, 802 [281 P.2d 31]; *Local 659, I.A.T.S.E.* v. *Color Corp. of America*, 47 Cal.2d 189, 195 [302 P.2d 294].

In this state it is held that the question of arbitrability may be submitted to the arbitrators if the parties so agree. (*O'Malley* v. *Petroleum Maintenance Co., supra,* 48 Cal.2d 107, 110; *McCarroll* v. *Los Angeles County etc. Carpenters,* 49 Cal.2d 45, 65 [315 P.2d 322].) In the McCarroll case, the court said: "Of course, even when the parties have conferred upon the arbiter the unusual power of determining his own jurisdiction, the court cannot avoid the necessity of making a certain threshold determination of arbitrability, namely, whether the parties have in fact conferred this power on the arbiter. There is no indication in the present contract that the parties intended any such result. . . . Whatever the merits of the procedure, we think it sufficiently outside the usual understanding of the relations of court and

arbiter and their respective functions to assume that the parties expected a court determination of arbitrability unless they have clearly stated otherwise. . . . As with all problems of contract interpretation, the answer must reflect the intention of the parties." (Pp. 65-66.) "The contract, however, must be read as a whole and the grievance and arbitration procedure viewed in the light of its purpose." (P. 67.) "As Mr. Justice Cardozo pointed out in *Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N.Y. 284 [169 N.E. 386, 391, 393], 'Courts are not at liberty to shirk the process of construction under the empire of a belief that arbitration is beneficent, any more than they may shirk it if their belief happens to be the contrary. No one is under a duty to resort to these conventional tribunals, however helpful their processes, except to the extent he has signified his willingness. . . .' '[The contracting parties] . . . are not to be trapped by a strained and unnatural construction of words of doubtful import into an abandonment of legal remedies, unwilled and unforeseen.' '' (P. 69.)

 There is nothing in the collective bargaining agreement before us to suggest an intention that the question of arbitrability of the alleged dispute should be submitted to the arbitrators. In the absence of a clear showing of such intent that question continues in its normal abiding place, the court forum.

 Not every synthetic grievance or dispute is arbitrable. There must be substantiality in the controversy. (*Cf. Gonzalez* v. *Gonzalez*, 174 Cal. 588, 593 [163 P. 993]; *Doyle* v. *Hunt Construction Co., supra,* 123 Cal.App.2d 51, 54; 5 C.J., § 25, p. 27; 6 C.J.S., § 10, p. 158.) In *International Assn. of Machinists* v. *Cutler-Hammer, Inc.*, 67 N.Y.S.2d 317, 318, the court said: "The clause of the agreement that 'the Company agrees to meet with the Union early in July 1946 to discuss payment of a bonus for the first six months of 1946' can only mean what it says, that the parties will *discuss* the subject. While the contract provides for arbitration of disputes as to the 'meaning, performance, non-performance or application' of its provisions, the mere assertion by a party of a meaning of a provision which is clearly contrary to the plain meaning of the words cannot make an arbitrable issue. It is for the Court to determine whether the contract contains a provision for arbitration of the dispute tendered, and in the exercise of that jurisdiction the Court must determine whether there is such a dispute. If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there cannot be any-

thing to arbitrate and the contract cannot be said to provide for arbitration." This ruling was affirmed in 297 N.Y. 519 [74 N.E.2d 464]. Most of the foregoing language is quoted with approval in *Textile Workers Union v. Firestone Plastics Division*, 6 N.J. Super. 235 [70 A.2d 880, 881]; *General Electric Co. v. United Elec. R. & M. Workers*, 196 Misc. 143 [91 N.Y.S.2d 724, 727]; *Application of Berger*, 79 N.Y.S.2d 490, 492; *Strauss Stores Corp. v. Local 830 R. & W. Employees Union*, 71 N.Y.S.2d 315, 319.

*General Electric Co. v. United Electrical Radio & Machine Workers of America, C.I.O.*, 300 N.Y. 262 [90 N.E.2d 181, 182]: "If, under the unambiguous terms of an agreement calling for arbitration, there has been no default, the court may not make an order compelling a party to proceed to arbitration. . . . If there is no real ground of claim, the court may refuse to allow arbitration, although the alleged dispute may fall within the literal language of the arbitration agreement. Such is the situation here. The anti-discrimination clause of the collective bargaining agreement cannot be invoked, in the circumstances of this case, to compel a change in the second collective bargaining agreement. Neither compensation nor pension credits are given by the company for time spent in union activity beyond the maximum number of hours per week for which the company has agreed to pay. To do so would be to discriminate in favor of union representatives. The company has no such obligation. The pension plan is administered on the basis of compensation paid to all of its employees. There is no possible basis for a charge of discrimination, and by that token, no possible ground for arbitration."

There is no room for difference of opinion at bar. The sole objective of appellant's application for an order directing arbitration was to relieve it and its members of the express agreement that each machine supervisor "shall be assigned to a selling window each day and sell tickets each race." This could not be accomplished without violation of the plain provision limiting the power of the arbitrators with respect to making modifications of the contract. (See *Simons v. Publishers' Assn. of New York City*, 94 N.Y.S.2d 362, 370; *In re Buffalo & E. Ry. Co.*, 250 N.Y. 275 [165 N.E. 291, 292]; *In re Amsterdam Dispatch, Inc.*, 254 App.Div. 233 [4 N.Y.S.2d 908]; *M. P. Berglas Mfg. Co. v. Shadel*, 75 N.Y.S.2d 425, 427; *Gould Storage Battery Corp. v. United E., R., & M. Wkrs.*, 137 N.J.L. 522 [61 A.2d 50, 52]; *Western Union Tel. Co. v.*

*American Communications Assn.*, 299 N.Y. 177 [86 N.E.2d 162, 166]; *United Electrical, R. & M. Wkrs.* v. *Walter Kidde & Co.*, 136 N.J.L. 544 [57 A.2d 54, 55-56].)

The court correctly ruled that the alleged grievance was not an arbitrable matter.

Appellant asserts error in refusal of the trial judge to hear oral evidence. The original petition was filed in April, 1958, and the hearing finally took place on July 7, 1958. During the interval 12 affidavits were filed by the contesting parties. At the time of the hearing the following occurred, according to the minutes: "Petitioner, by its attorney David Sokol, requests that the minutes show that petitioner wanted to put on oral testimony and that the witnesses are present, and that the request to put on oral testimony is denied and the matter is tried upon the affidavits and pleadings." No request was made for leave to file additional affidavits and no showing proffered with respect to the oral evidence petitioner desired to produce or how, if at all, it would or could help petitioner's cause. The suggestion is made in the opening brief that "Union contends that at the time of the execution of the agreement it was agreed that further negotiations would be had with respect to the requirement that machine supervisors be assigned to a selling window each day and sell tickets each race; the Respondents contend that there was no such understanding;" also that it was an abuse of discretion for the court to refuse to resolve this conflict in the evidence through consideration of oral testimony. Who the witnesses were or what their testimony would be does not appear. But it is plain that the subject matter of machine supervisors acting as ticket sellers was expresssly covered by the agreement and it was specified that no arbitration could result in a modification of that agreement. Oral evidence, if adduced and if favorable to the contention that there was an agreement to further negotiate with respect to that clause of the contract, would not authorize the arbitrators to inject themselves into the role of negotiators, especially when the parties had merely agreed to negotiate, not to agree further. The language quoted from *International Assn. of Machinists* v. *Cutler-Hammer, Inc., supra,* 67 N.Y.S.2d 317, 318, is apposite here.

In support of the abstract right to produce oral evidence upon a hearing under section 1282, Code of Civil Procedure, counsel for appellant relies upon that portion of the section which provides for a jury trial upon demand of the party alleged to be in default (not the applicant) upon the issue of

the making of an agreement to arbitrate or the issue of respondent's alleged default in performance of such agreement. But there was no such demand here, petitioner had no right to make one, and the section provides that in the absence of such demand the court shall hear and determine the issue after a summary trial thereof. Section 1285, Code of Civil Procedure, provides: "Any application made under the authority of this act shall be heard in a summary way in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."

 Cases cited from other jurisdictions are not controlling, for it is settled law in California that motions are heard exclusively upon affidavits (*People* v. *Tucker,* 117 Cal. 229, 230-231 [49 P. 134]; *Guardianship of Van Loan,* 142 Cal. 423, 426 [76 P. 37]; *Fuller* v. *Lindenbaum,* 29 Cal.App.2d 227, 230 [84 P.2d 155]; *Beckett* v. *Kaynar Mfg. Co., Inc.,* 49 Cal. 2d 695, 698 [321 P.2d 749], footnote 3) unless the court in its discretion orders or permits the taking of additional evidence (*Muller* v. *Muller,* 141 Cal.App.2d 722, 731 [297 P.2d 789]; 34 Cal.Jur.2d, § 12. p. 514).

 Upon the facts presented by the instant record there was no abuse of discretion in the refusal to hear oral evidence.

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.