[L. A. No. 24270. In Bank. Oct. 19, 1956.]

LOCAL 659, I.A.T.S.E. (a Corporation), Appellant, v. COLOR CORPORATION OF AMERICA, Respondent.

190

Joseph W. Fairfield and Ethelyn F. Black for Appellant.

Pauline Nightingale and Leon H. Berger as Amici Curiae on behalf of Appellant.

Irving A. Bernstein for Respondent.

CARTER, J.—Pursuant to the statutory provisions concerning arbitration (Code Civ. Proc., §§ 1280-1293), Aller, petitioner, the business representative of a union, Local 659, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators (by stipulation the union was substituted as petitioner in place of Aller), filed against defendant, Color Corporation of America, a corporation (hereinafter referred to as Color), asking that Color be required to arbitrate a dispute under a collective bargaining agreement. Defendant answered, its main claim being that petitioner had lost its right to have the arbitration provision in the collective bargaining agreement enforced because it had repudiated and waived it. After hearing on the petition, the court gave judgment dismissing the proceeding and awarding costs to defendant. Petitioner appeals.

It is not disputed, and the court found, that Color, engaged in the film processing business, had collective bargaining agreements with five other unions in addition to petitioner and all contracts contained the same arbitration clause. The clause provided three steps in grievance procedure for settling disputes with regard to wages, hours or other conditions of employment, and the interpretation of the agreement, the first two being an attempt by representatives of Color, the employer, and the unions to settle the dispute. Failing settlement, the third provides for the appointment of an arbitrator by the parties within 10 days thereafter to settle it. Either party may proceed under the arbitration clause. Any grievance for the payment of dismissal pay not presented under the first step shall be deemed waived unless presented 365 days after the employee becomes entitled to such pay. Under the collective bargaining agreements employees are entitled to "dismissal pay" but the employer is not liable therefor if the employee was dismissed "for any other cause or causes beyond the control of the" employer, Color. In 1954, Color closed its plant and dismissed all of its employees, including Krog, Ragin and Moore who were members of petitioner, Local 659. In August, 1954, a dispute arose between Color and the unions as to whether the dismissed union employees should receive dismissal pay inasmuch as Color claimed that under the bargaining agreement the dismissals were for causes beyond their control and the union contending otherwise. All of the unions except petitioner, Local 659, and defendant proceeded with the grievance and arbitration procedure and those

proceedings are still pending. Defendant has expended over $300 as expenses of the proceedings.

The trial court also found in addition to the foregoing that defendant is not in "default" in proceeding with arbitration but petitioner is and hence the instant proceedings should be dismissed; that petitioner has been guilty of unreasonable delay in bringing the proceeding and is estopped to seek enforcement of the arbitration provision; that defendant's demands on petitioner to arbitrate during the grievance procedure by the other unions were refused by petitioner and it wilfully failed and refused to comply with the arbitration provision and instead elected to and did bring proceedings against petitioner before the state labor commissioner to collect dismissal pay.

Petitioner argues that under the law it could not lose its right to have the arbitration provision enforced and under the facts, as a matter of law, it did not. Defendant urges that petitioner lost his right to arbitration and the evidence supports the trial court's finding in this respect. No question is raised as to whether the dispute here involved was subject to arbitration under the arbitration statute and the collective bargaining contract.

The evidence on the subject is by affidavit and letters. In an affidavit by Bernstein, counsel for Color, offered by Color, it is stated: That on August 5th and 12th, 1954, he explained defendant's position on the dispute to petitioner's representatives, that is, that it was not liable for dismissal pay. On the 18th, it agreed with counsel for the unions other than petitioner, that grievance and arbitration procedure was necessary; on August 25th, he was advised that the labor commissioner had issued an order (dated August 19th) to appear before him on a charge by petitioner that defendant was invoking section 222 of the Labor Code,* that he explained the arbitration provision to the commissioner; that on September 2d he met with the commissioner and petitioner's representative Nave and asked Nave to dismiss the complaint before the commissioner and arbitrate under the bargaining agreement but Nave refused; that after some correspondence with the commissioner, Stone, defendant's vice president, on

---

*"It shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either wilfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee any part of the wage agreed upon." (Lab. Code, § 222.) A violation of the section is a misdemeanor. (*Id.*, § 225.)

September 22d, wrote a letter (sending a copy to petitioner) reviewing the matter of arbitration and stating: "By this action and by the action of IATSE Local 659 [petitioner], you are requiring us to defend our position in court in the face of the fact that our bargaining agreement provides otherwise. We intend to hold both you and Local 659 fully responsible for all consequences resulting from this ill-advised action"; that on September 29th petitioner wrote to Stone stating: "Our dispute with you is not a matter of interpretation but one of non-payment and we are prepared to show that you have wilfully refused to make such payment and that you were not compelled to go out of business, as you claimed you were in the defense raised in the arbitration proceeding. Even that is not a good defense in the current hearing with the other unions, but since they have elected to take the other course, that is their problem. The best way to settle this matter is to let everyone testify under oath and I would certainly expect you to be very willing to accept this judicial process of settling disputes. After all, when one is under oath, the truth and only the truth will prevail"; that on September 27th the commission advised defendant that petitioner insisted on criminal proceedings and the matter will be referred to the "city attorney." Stone's affidavit, offered by defendant, stated that he had a "great many telephone conversations" with Aller before and after January 11, 1955, and prior to Aller's letter of September 29th, 1954, he made "repeated demands" upon Aller that Local 659 abide by the terms of the bargaining and arbitrate the dispute; that after the receipt of that letter "and in every subsequent conversation, I informed Mr. Aller that the Company considered his tactics in this whole matter to be reprehensible, that the Company [defendant] chose to consider those tactics and his unequivocal refusal to arbitrate as a repudiation and breach of the contract, and that the Company would no longer consent to an arbitration"; he acknowledged receiving the letters Aller mentions in his affidavit but denies the agreement mentioned by Aller.

Aller in his affidavit on behalf of petitioner stated he denied Local 659 had ever refused to arbitrate the dispute but defendant refused to cooperate and he and Stone agreed to "hold in abeyance" all disputes until one of the other union's (Local 683) arbitration had been completed; he refers to letters he says he sent to Stone during January, March and

April, 1955, demanding arbitration inasmuch as the arbitration with Local 683 had been favorable to that union.

The question thus presented is whether or not there has been a waiver, mutual rescission, repudiation, laches, or estoppel by or on behalf of petitioner in the enforcement of the arbitration clause. We are not concerned here with any question involving the repudiation or violation of the terms of the bargaining agreement other than the arbitration provision. (See conflict of authorities on that subject: 3 A.L.R. 2d 383.) ▮ Section 1280 of the Code of Civil Procedure provides that a provision in a written contract to settle by arbitration a controversy arising out of the contract or the refusal to perform the whole or any part thereof "shall be valid, enforcible and irrevocable, *save upon such grounds as exist at law or in equity for the revocation of any contract*" (emphasis added). It is thus indicated that there may be instances in which the right to enforce an arbitration provision is lost. This is further shown by other provisions. A party aggrieved by the failure or refusal of another to perform under a contract providing for arbitration may have the provision enforced by the court; the court shall hear the matter and on being satisfied the failure to comply with the arbitration "is not in issue" shall order the arbitration to proceed; if "default" be in issue, that shall be tried. (*Id.*, § 1282.) If any action be brought on the issue arising out of the contract for arbitration the court shall stay the action upon being satisfied that the issue is referable to arbitration provided the "applicant for the stay is not in default in proceeding with" the arbitration. (*Id.*, § 1284.) It is also evident that defendant could have proceeded to enforce the provision for arbitration under the code when petitioner refused to arbitrate.

▮ In harmony with the arbitration statute, *supra*, it has been held that the arbitration provision of a contract may be waived by either or both of the parties by litigating the dispute which would be arbitrable under the provision and not raising the question of the arbitration provision (*Case* v. *Kadota Fig Assn.*, 35 Cal.2d 596 [220 P.2d 912]; *Trubowitch* v. *Riverbank Canning Co.*, 30 Cal.2d 335 [182 P.2d 182]; *Jones* v. *Pollock*, 34 Cal.2d 863 [215 P.2d 733]; *Landreth* v. *South Coast Rock Co.*, 136 Cal.App. 457 [29 P.2d 225]; *Pierce* v. *Wright*, 117 Cal.App.2d 718 [256 P.2d 1049]; *Fejer* v. *Paonessa*, 104 Cal.App.2d 190 [231 P.2d 507]; *Wilson* v. *Mattei*, 84 Cal.App. 567 [258 P. 453]; 161

A.L.R. 1426; 117 *id.*, 302; see *Squire's Dept. Store, Inc.* v. *Dudum*, 115 Cal.App.2d 320 [252 P.2d 418]) and that a failure by a party to proceed to arbitrate in the manner and at the time provided in the arbitration provision is a waiver of the right to insist on arbitration as a defense to an action on the contract. (See *Pneucrete Corp.* v. *United States Fid. & Guar. Co.*, 7 Cal.App.2d 733 [46 P.2d 1000]; *Jordan* v. *Friedman*, 72 Cal.App.2d 726 [165 P.2d 728]; see 117 A.L.R. 302; 161 *id.* 1426.) ▉ There may be a mutual rescission (see *Drake* v. *Stein*, 116 Cal.App.2d 779 [254 P.2d 613]). It has been said: "In the light of present-day arbitration statutes, most agreements to arbitrate future disputes are likely to be held to be lawful and valid; and under such statutes the courts may stay proceedings at law and order the arbitration to go forward. When one of the parties is resisting such an order, the court must make two principal determinations before issuing it. First was a valid agreement to arbitrate ever made by the parties and is it still operative? Secondly, does the dispute that now exists fall within the terms of that agreement, reasonably interpreted? In the present action we are dealing only with the former of these questions.

". . . the arbitration agreement . . . if lawful, may have been rescinded, repudiated, or avoided. The parties to such an agreement have power to rescind it by mutual agreement to that effect. The ordinary arbitration statutes do not deprive them of this power. The parties may, however, rescind other agreements that they have made, without intending to affect their agreement to arbitrate disputes. The agreement to arbitrate may be wholly separate from other transactions; or, although contained in a single written instrument with other provisions, it may be wholly independent of them— a separate and collateral agreement.

"Although one party can not by himself 'rescind' a contract, he can wrongfully 'repudiate' it. What is the effect of his repudiation? To answer this, we must first interpret his expressions and determine the coverage of the repudiation. Suppose first that he repudiates the agreement to arbitrate itself. By such a repudiation he does not deprive the other party of his right to arbitration; and if the repudiator brings an action in breach of his valid arbitration agreement the defendant can defend on the ground that arbitration is a condition precedent, or under a statute can obtain a stay or an order to arbitrate, or can counterclaim for damages.

But such a repudiator has himself no right to arbitration. The other party can now bring his action in reliance on the repudiation, or otherwise change his position in reliance. Thereafter, the repudiator has no power of retraction and can not insist on the remedy by arbitration. . . .

"In determining whether a repudiation or other vital breach of a contract should deprive a party of his right to an arbitration of the existing dispute, the court should consider the form and extent of the repudiation or breach and the reasons for which it occurred. A repudiation that clearly includes the arbitration provision itself should prevent the repudiator from using it in defense when sued in the courts. If the provision is not itself repudiated and the issue that is raised by the alleged breach is one that is within the coverage of the provision, the defendant should be supported in insisting on arbitration of the issue unless his bad faith and wilful misconduct are sufficiently obvious to justify a discretionary refusal of such support." (Corbin on Contracts, § 1443.) In *Tas-T-Nut Co.* v. *Continental Nut Co.*, 125 Cal. App.2d 351, 354 [270 P.2d 43], the court, while holding the evidence insufficient to show a waiver or repudiation of an arbitration provision, proceeded to discuss applicable principles. It said: ". . . it has often been held the right to arbitrate can be waived [citations], and that whether or not waiver has taken place is ordinarily a question of fact, yet we are compelled to hold upon the record here that there is no support for the trial court's finding that the appellant had ever waived the provision of the contract binding the parties to proceed in arbitration if controversies arose between them. The right to arbitrate is of course possessed by each party to the agreement and notwithstanding one party may impede the normal course of arbitration such conduct cannot dispense with the right of the other party to compel it. Our statute affords complete remedies to implement and to specifically enforce this right. If, therefore, one party to an arbitration agreement has by dilatory tactics or an express refusal to proceed with arbitration placed himself in such a position that the other party could accede to the abandonment of the arbitration clause, yet such party need not do so. . . . But this is an election which it must make for it cannot keep alive in itself the right to arbitrate and at the same time deny it to its adversary. (*Krauss Bros. Lbr. Co.* v. *Louis Bossert & Sons*, 62 F.2d 1004, 1006.) Said the court as to one party to an arbitration agreement who

had ignored that agreement and brought action in a state court:

" '. . . The state action was indeed a repudiation of the plaintiff's own promise to arbitrate; it gave the defendant an election, taking the plaintiff at its word, to put an end to the arbitration clause, or to insist upon performance. By its plea in the answer it chose the second course. . . . It is true that it did not follow this up by selecting an arbitrator as it had promised to do. Until it did, it was therefore not in position to enjoin prosecution of the action under section 5 of the New York Arbitration Act . . . and delay to do so might indeed forfeit its recourse to that remedy. . . . But, so far as concerned the plaintiff's repudiation, it had chosen not to call off the clause, not to "rescind" it; and it could not prevent the plaintiff's resumption of the remedy, while its own position remained unchanged.'

"The above holding by the federal court is no more than an application of the familiar rule that if an agreement be breached the party against whom the breach is committed may refuse to accept the breach or terminate the contract, thus keeping the contract alive, but that if he does so he keeps it alive both for the benefit of himself and for that of the other contracting party. (Williston on Contracts, rev. ed., § 684; *Alder* v. *Drudis*, 30 Cal.2d 372, 381 [182 P.2d 195].)''

In the instant case it appears that the dispute under the collective bargaining agreement arose in August, 1954 between petitioner and all the other unions and the other unions commenced the grievance and arbitration procedure. Petitioner however, refused to participate. The dispute with all the unions was exactly the same, whether dismissal pay was to be paid under the contract. In the same month petitioner complained to the state labor commissioner that pay (dismissal pay) was being withheld contrary to section 222 of the Labor Code, *supra*, and the commissioner issued his order for a hearing on that subject. On September 29th petitioner, by Aller, wrote the letter to defendant heretofore quoted and it was in response to a demand that petitioner arbitrate. While not too clear, that letter is readily susceptible of the construction that petitioner did not wish to arbitrate but preferred to proceed before the labor commissioner. In any case, Stone's affidavit shows that defendant's repeated demands on petitioner, both before and after the letter, that

it arbitrate, had been refused and after the letter he informed Aller that petitioner's repudiation of the arbitration provision and refusal to arbitrate was a breach of the contract and defendant would "no longer consent" to arbitration. There is some conflict on the matter by reason of Aller's affidavit but the resolution of that conflict was for the trial court. Even if the letter did not constitute an unequivocal refusal to arbitrate, Stone's affidavit shows other unequivocal refusals and defendant's acceptance thereof. For the same reason it is not necessary to consider the proceeding before the labor commissioner; there is sufficient without it. Aller in his letters to Stone of January 11, 1955, and thereafter indicated a desire to arbitrate, but we take it from Bernstein's and Stone's affidavits that there had before then been a repudiation of the arbitration provision and acceptance thereof by defendant. Indeed, it may well be concluded from those affidavits that there was a mutual rescission of the provision for arbitration.

■ A repudiation of a contract accepted by the promisor excuses performance by the promisee. (*Bomberger* v. *McKelvey*, 35 Cal.2d 607 [220 P.2d 729]; *Walker* v. *Harbor Business Blocks Co.*, 181 Cal. 773 [186 P. 356]; Civ. Code, § 1511.) ■ And it is said in *Dessert Seed Co.* v. *Garbus*, 66 Cal.App.2d 838, 847 [153 P.2d 184]: "It is well settled that an abandonment of a contract may be implied from the acts of the parties and this may be accomplished by the repudiation of the contract by one of the parties and by the acquiescence of the other party in such repudiation. This doctrine is supported by many cases. [Citations.]

"In support of the court's findings and judgment, the evidence would warrant a conclusion that there had been a mutual abandonment or rescission of the oral contract."

Amicus curiae* contends on behalf of petitioner on petition for hearing in this court that the proceeding by petitioner before the labor commissioner and the steps for enforcement by the commissioner of section 222 of the Labor Code, *supra*, cannot be considered as an election of remedies by petitioner as it would mean that the arbitration provisions would control over that section and the policy thereby established by the Legislature relying upon *Pneucrete Corp.* v. *United States Fid. & Guar. Co.*, 7 Cal.App.2d 733 [46 P.2d 1000], and *Wallace* v. *Carpenters Local Union*, 137 Cal.App.2d 468

*The State Labor Commissioner.

[290 P.2d 583]. In the Pneucrete case the court declared that an action would lie on a materialman's bond given by the contractor as required by statute when there was a construction contract between the contractor and a flood control district, even though there was an arbitration provision in the construction contract because the bond was required by statute and to allow arbitration to prevent an action thereon would frustrate the public policy requiring the bond. In the Wallace case it was held that the employer could obtain an injunction authorized by the law against jurisdictional strikes (Lab. Code, §§ 1115-1120) even though there was an arbitration clause in the collective bargaining agreement. It is unnecessary to pass upon that point, however, because the judgment is otherwise supportable as seen from the foregoing discussion. Moreover, we see no frustration in the policy declared in section 222 in treating a proceeding thereunder as some indication that petitioner was abandoning or repudiating the arbitration provision.

Assuming the right to enforce the provisions of section 222 cannot be and is not waived by an arbitration provision, a person's conduct in pursuing the remedy provided for under this section is some evidence that he does not intend to arbitrate. What the labor commissioner or a prosecuting attorney may or may not do in enforcing the section has no bearing on the arbitration provision, but what the party to the contract containing the arbitration clause does, may throw some light on his intention.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.