[Civ. No. 24429.   Second Dist., Div. Two.   Aug. 3, 1960.]

THE PUBLICISTS LOCAL 818 OF THE INTERNA-
TIONAL ALLIANCE OF THEATRICAL AND STAGE
EMPLOYEES AND MOTION PICTURE MACHINE
OPERATORS OF THE UNITED STATES AND
CANADA (a Corporation), Appellant, v. NATIONAL
SCREEN SERVICE CORPORATION (a Corporation),
Respondent; JAMES J. MAJORELL, Movant and Ap-
pellant.

492

James J. Majorell, in pro. per. and David Lynn for Appellants.

Kaplan, Livingston, Goodwin & Berkowitz, Bayard F. Berman and Lawrence R. Booth for Respondent.

RICHARDS, J. pro tem.*—Pursuant to statutory provisions concerning arbitration (Code Civ. Proc., §§ 1280-1293), petitioner The Publicists Local 818 of the International Alliance of Theatrical and Stage Employees and Motion Picture Machine Operators of the United States and Canada, a California corporation, doing business as The Publicists Association (hereinafter referred to as Local 818), instituted this proceeding against National Screen Service Corporation, a corporation (hereinafter referred to as National Screen), to require National Screen to arbitrate a dispute under a collective bargaining agreement concerning the lay-off and subsequent discharge of James J. Majorell (hereinafter referred to as Majorell), a member of Local 818, and employed by National Screen as a trailer supervisor. The matter was heard upon petitioner's motion for an order directing arbitration to proceed, based upon its verified petition and supporting affidavits and respondent's declaration in opposition thereto. Following the making and filing of findings of fact and conclusions of law, a judgment was entered dismissing the proceedings and awarding costs to the respondent.

Thereafter, James J. Majorell, as a party aggrieved by the judgment, moved to set the judgment aside and to enter a new and different judgment. His motion was denied. That he thus properly made himself a party to the record is not disputed. (*Gardner* v. *Trevaskis,* 158 Cal.App.2d 410, 413 [322 P.2d 545].)

Local 818 and Majorell have each appealed, their appeals having been consolidated by stipulation.

The court found, and it is not disputed, that Local 818 and National Screen entered into a two-year written collective bargaining agreement on or about June 17, 1952, which, among other things, specified the wage schedule, hours of employment and working conditions for trailer supervisors. The agreement further provided that as between competent seniors, seniority should prevail in lay-offs; for the discharge for just cause by the employer of any trailer supervisor and for a schedule of dismissal pay. The agreement also contained

*Assigned by Chairman of Judicial Council.

a clause entitled "Arbitration," providing, in part, that "For the purpose of maintaining the relationship between the parties hereunder, the Guild [Local 818] and the Producer [National Screen] each agree to notify the other in writing of a representative or representatives selected to adjust all grievances, complaints or disputes relating to working conditions *arising under and during the term of this Agreement.* Such representatives . . . shall use every effort to obtain a speedy and equitable adjustment of all such grievances, complaints, or disputes. *In the event of any failure to arrive at an adjustment,* any dispute hereunder may be submitted by either party to the Federal Mediation and Conciliation Service." (Emphasis supplied.) The clause then provided for the alternative rejection from a panel of five arbitrators until one arbitrator remained. In 1954 the term of the foregoing collective bargaining agreement was extended to June 20, 1958.

The court further found, and it is undisputed, that Majorell was employed by National Screen and that on or about March 11, 1958, National Screen notified Majorell that he had been laid off for a period of from six to eight weeks, commencing April 19, 1958; that prior to June 20, 1958, Majorell and Local 818 communicated with National Screen about the layoff and made efforts to obtain an adjustment, and, that on June 27, 1958, Majorell was advised by National Screen that his lay-off was permanent and his dismissal pay was enclosed in the letter of dismissal.

Although not the subject of a finding, it appears to be undisputed that the interparty efforts to adjust the Majorell grievance continued after June 20, 1958, the termination date of the collective bargaining agreement. It further appears to be undisputed that on October 21, 1958, Local 818 notified the Federal Mediation and Conciliation Service that the parties had failed to arrive at an adjustment of their dispute, "hence the union hereby submits the dispute to you" and requested the nomination of a panel of five arbitrators in accordance with the above quoted clause. Contemporaneously, Local 818 advised National Screen that Majorell's request to Local 818 for arbitration had been granted and enclosed a copy of its request to Federal Mediation and Conciliation Service for the nomination of arbitrators. The court held that the first step taken by Local 818 to submit the matter to arbitration was the request to Federal Mediation and Conciliation Service on October 21, 1958, to appoint arbitrators and

further held that National Screen had not initiated arbitration proceedings prior to October 21, 1958. The court concluded that at the time Local 818 initiated arbitration proceedings on October 21, 1958, there was no agreement in effect between Local 818 and National Screen obligating the latter to arbitrate any dispute concerning Majorell's lay-off.

Although the court found, and it is undisputed, that on April 8, 1959, Local 818 and National Screen entered into a new collective bargaining agreement, dated as of June 20, 1958, and that Majorell is not included therein as a listed employee covered thereby, there is no contention by appellants of any right to arbitrate the Majorell grievance under the new contract.

Local 818 and Majorell argue that under the law and under the facts, as a matter of law, they did not lose their right to an enforcement of the arbitration provision. National Screen urges that the right of arbitration is lost unless initiated before the expiration of the agreement providing therefor, and that the evidence supports the trial court's finding that the initiatory steps to submit the grievance to arbitration were taken subsequent to the termination of the collective bargaining agreement.

The arbitration statute (Code Civ. Proc., §§ 1280-1293) declares that a provision of a written contract (other than a contract pertaining to labor) "to settle by arbitration a controversy thereafter arising out of the contract or the refusal to perform the whole or any part thereof, or an agreement in writing to submit an existing controversy to arbitration . . . shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract; . . ." (§ 1280.) The statute provides for two distinct kinds of agreement to arbitrate. One is an agreement to submit to arbitration a possible future dispute arising out of an existing contract. The other is an agreement to submit to arbitration an existing dispute or controversy between the parties. (5 Cal.Jur.2d, p. 83; Feldman, *Arbitration Law in California*, 30 So. Cal. L. Rev., 375, 392.) It is apparent from an inspection of the contract here involved that when entered into it was an agreement to submit to arbitration "future disputes" which might arise thereunder and that it is not an agreement to submit to arbitration a controversy then existing between the contracting parties.

The statute goes on to provide, as here pertinent, that "A

party aggrieved by the failure, neglect or refusal of another to perform under an agreement in writing providing for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that . . . such failure to comply therewith is not in issue, shall make an order directing the parties to proceed to arbitration. . . . If the . . . default be in issue an order shall be made directing a summary trial thereof. . . . If the finding be . . . that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the finding be that . . . there is a default in proceeding thereunder, an order shall be made summarily directing the parties to proceed with arbitration. . . ." (§ 1282.)

It is clear from the foregoing section that "it is only after a finding has been made that under a written contract of arbitration a party is in default in the performance thereof, that the court will order the parties to the contract to proceed in accordance therewith." (*Drake* v. *Stein,* 116 Cal.App.2d 779, 784 [254 P.2d 613].) A "default" in performance is the "failure, neglect or refusal of another to perform" under the arbitration agreement. (§ 1282.) "[T]he word 'default,' as used throughout the section [1282], obviously refers only to the 'default' of a party in refusing to proceed to arbitration as agreed rather than to a default by a party under the main provisions of the parties' contract." (*Weiman* v. *Superior Court,* 51 Cal.2d 710, 712 [336 P.2d 489].) As the arbitration clause in a future disputes agreement is not self-executing, it may be waived by failure to assert. (*Local 659 I.A.T.S.E.* v. *Color Corp. of America,* 47 Cal.2d 189, 194-195 [302 P.2d 294] ; Kagel, *Labor and Commercial Arbitration under the California Arbitration Statute,* 38 Cal.L.Rev. 799, 818; Feldman, *Arbitration Law in California, supra,* 30 So. Cal. L. Rev. 375, 429-438.) Illustrative of circumstances indicating a waiver of the right to arbitrate are: The submission of an arbitrable suit to a court for decision without contending it should be arbitrated (*Trubowitch* v. *Riverbank Canning Co.,* 30 Cal.2d 335, 339 [182 P.2d 182] ; *Jones* v. *Pollack,* 34 Cal.2d 863, 867 [215 P.2d 733]) ; failure by a party to proceed to arbitrate in the manner and at the time provided in the arbitration provision (*Pneucrete Corp.* v. *United States Fid. & Guar. Co.,* 7 Cal.App.2d 733, 741 [46 P.2d 1000] ; *Jordan* v. *Friedman,* 72 Cal.App.2d 726,

727-728 [165 P.2d 728]; mutual rescission (*Local 659 I.A.T.S.E.* v. *Color Corp. of America, supra,* page 195).

■ Inasmuch as the promisee may waive his right to the performance of the covenant for arbitration, the promisor is under no duty to perform such covenant until a demand for performance of the arbitration covenant is made. ■■ ''One who makes a promise to do something in the future, having the ability to do it, and no time having been specified for performance, does not violate his agreement until he refuses to perform after demand made.'' (*Wilson* v. *Zorb,* 15 Cal.App.2d 526, 535 [59 P.2d 593].) The covenant to submit disputes to arbitration is one of the numerous provisions of the collective bargaining agreement here involved, and which entire agreement, by its terms, expired June 20, 1958. From which it follows that the covenant to submit to arbitration terminated with the other provisions of the agreement and was not subject to enforcement unless the promisor was in default of performance of such covenant at the time of the expiration of the contract. That an enforceable agreement must exist when the demand for arbitration is made has been repeatedly recognized in California. In *Hanes* v. *Coffee,* 212 Cal. 777 [300 P. 963], a contention was made that the controversy should have been arbitrated under the terms of a lease providing ''any question of fact affecting the rights of the parties'' to be settled by arbitration. In denying the right to arbitration, the Supreme Court said at page 779 : ''Conceding that this provision would be enforceable under our statutes, we do not think that it is applicable to the present controversy, in which the lessor contends that by reason of failure of the lessee to commence operations within the specified period, the lease never became operative, or if it did, is now terminated. The provision clearly does not contemplate that this question shall be submitted to arbitration, since if the allegations of plaintiffs' complaint are sustained, the result is that the lease, including the arbitration provision, is wholly inoperative, and the lessee can claim no rights thereunder.''

In *Friedlander* v. *Stanley Productions, Inc.,* 24 Cal.App.2d 677 [76 P.2d 145], it was held that the arbitration provisions of a motion picture director-personal representative and manager contract could not be enforced where the employment contract had been cancelled and terminated. The court said at page 680 : ''The instant action was brought upon the contention that the contract of employment had been cancelled and

terminated. If the contract had been terminated, then the arbitration provision was inoperative.'' And in *Local 659 I.A.T.S.E.* v. *Color Corp. of America, supra,* 47 Cal.2d 189, at 195 it is stated: '' 'In the light of present-day arbitration statutes, most agreements to arbitrate future disputes are likely to be held to be lawful and valid; and under such statutes the courts may stay proceedings at law and order the arbitration to go forward. When one of the parties is resisting such an order, the court must make two principal determinations before issuing it. First was a valid agreement to arbitrate ever made by the parties and is it still operative?' '' The rule is thus stated in Williston on Contracts, revised edition, section 1920: ''An enforceable arbitration clause must be predicated upon a valid existing contract.'' The point we make is summed up in a succinct statement in *Silva* v. *Mercier,* 33 Cal.2d 704, 709 [204 P.2d 609], that ''if there is no contract there is no provision for arbitration.''

We therefore conclude that in order to establish a default in the performance of a provision of a written contract to settle by arbitration a controversy thereafter arising therefrom, in the event an arbitrable controversy does arise, a demand for the performance of the arbitration provision must be made prior to the expiration of the contract of which the arbitration covenant is a part. An examination of the numerous authorities from other jurisdictions, cited by appellants, discloses no conflict with our conclusion. *Lane* v. *Endicott Johnson Corp.,* 274 App.Div. 833 [80 N.Y.S.2d 639], *Item Co.* v. *New Orleans Guild,* 256 F.2d 855 and *Application of Gottfried Oppenheimer, Inc.,* 140 N.Y.S.2d 521 were each cases arising out of a collective bargaining agreement and in which the demand to arbitrate was made prior to its expiration. *Textile Workers* v. *Herbert B. Newton & Co.,* 394 Pa. 422 [147 A.2d 155] arose out of a collective bargaining agreement and held that the employer was not relieved of his obligation to arbitrate a dispute simply because the arbitration did not take place prior to the termination of the agreement. It cannot be ascertained from the opinion when the demand for arbitration was made. The only issue in *Reconstruction Finance Corp.* v. *Harrisons & Crosfield, Ltd.,* 204 F.2d 366 was whether a claim sought to be submitted to arbitration was barred by the statute of limitations, and the court held that this was an issue for the arbitrators to decide. *Potoker* v. *Brooklyn Eagle, Inc.,* 161 N.Y.S.2d 609 [2 N.Y.2d 553, 141

N.E.2d 841] and *Botany Mills, Inc.* v. *Textile Workers Union of America,* 50 N.J.Super. 18 [141 A.2d 107], the latter not cited by appellants, each involved the question of arbitration of employees' severance pay, accrued vacation pay, and other matters arising out of the termination of a labor agreement as the result of the employer going out of business while being struck by the union. In *Potoker,* by a divided court, it was held that the parties must have intended the labor contract to include arbitration of disputes arising out of its termination. *Potoker* and *Botany Mills* are clearly distinguishable in that the disputes therein had their origin in the contract termination, hence could not have been the subject of arbitration prior thereto. Here, the dispute arose prior to the contract termination and is unrelated thereto. *Squire's Dept. Store, Inc.* v. *Dudum,* 115 Cal.App.2d 320 [252 P.2d 418] does not support the proposition, which appellants contend, that a party does not waive his right to arbitrate a dispute by making a demand for arbitration after the expiration of the agreement to arbitrate. Such an issue was not discussed nor decided. The case merely decided that appellant therein had not waived his right to arbitration by reason of a compulsory election arising out of the filing of an answer and cross-complaint in a prior action where such pleadings did not present to the court for determination any dispute which the parties had agreed to arbitrate.

As part of its first major contention, appellants contend, without citation of supporting authority, that in any event "arbitration procedures as provided for in the agreement were initiated by the Local prior to the expiration of the contract." They argue that the overtures seeking an interparty adjustment of the controversy were "the first phase of the arbitration procedures provided for in the agreement" and that the demand for arbitration made after the contract expired was the "second phase of the arbitration procedures provided for in the agreement." Appellants concede, as they must (*Cone* v. *Union Oil Co.,* 129 Cal.App.2d 558, 563-564 [277 P.2d 464]), that pursuit and exhaustion of the interparty grievance procedures was a prerequisite to a resort to judicial enforcement of the arbitration covenant.

The clause dealing with adjustment of grievances contains two separate and distinct steps. The first step is the interparty "effort to obtain a speedy and equitable adjustment of all such grievances." The second step is set forth in a separate

sentence which reads: "In the event of any failure to arrive at an adjustment, any dispute hereunder may be submitted by either party to the Federal Mediation and Conciliation Service." That which appellant refers to as the "first phase" and "second phase of the arbitration procedure" are not two phases of the "arbitration procedures," they are two phases or steps in the process of settling disputes and grievances. The exercise of the first step of interparty negotiation is a prerequisite to, but not a part of, the exercise of the second step of arbitration. If a dispute is not adjusted by the informal negotiation between the representatives of the Union and the representatives of the management, either party is then free to initiate arbitration, and under the agreement the submission of the matter to the Federal Mediation and Conciliation Service for appointment of a panel of proposed arbitrators is the first step in the arbitration procedure. That arbitration is a separate and distinct step in the procedure for settlement of labor grievances is apparent from *Griggs* v. *Transocean Air Lines,* 176 Cal.App.2d 843, 845 [1 Cal.Rptr. 803], in which an airline pilot sued for wages, vacation pay and other claims based upon the provisions of a collective bargaining agreement. Prior to suit, the plaintiff had written to the chief pilot setting forth certain claims and grievances which the court said "would be the first step of compliance with the procedure for settlement of grievances under the collective bargaining agreement." It does not appear how far the plaintiff pressed his claims, but, as stated in the opinion, "he did not seek arbitration, which is the last step established by the collective bargaining agreement for the settlement of grievances." The court then goes on to say: "Not having recourse to arbitration, nor proposing it, appellant filed his complaint in the superior court." Judgment for defendant upon a trial of the special defense that appellant had not had recourse to arbitration was affirmed.

A further contention by appellants is that in finding untrue the allegation in their petition that Majorell's lay-off was not made in good faith, the court exceeded its jurisdiction, thereby causing reversible error. The contention is untenable. In the first place, if the making of such finding was error, it was most clearly invited by the appellants in raising the issue in the petition filed. A party may not inject an issue in an action and then complain that a finding thereon is outside the issue. (*Bruce* v. *Churchman,* 55

Cal.App.2d 850, 854 [132 P.2d 8].) ▮▮▮ Secondly, it is clear from the conclusions of law that the court's determination that appellants were not entitled to arbitration is based upon the nonexistence of an agreement affecting Majorell when the arbitration proceedings were initiated and not upon the finding of respondent's good faith in laying him off. *Krug* v. *Republic Pictures Corp.*, 120 Cal.App.2d 593 [261 P.2d 562] cited by appellants is clearly distinguishable. In that case the trial court denied arbitration solely upon a finding that a certain named position was not within the collective bargaining agreement in a case where the question at issue was whether the petitioner who occupied the exempt position was entitled to perform the duties of an included position and it was held on appeal that the trial court had attempted to decide the merits of a controversy which was an issue to be determined by the arbitration board. Neither does *Myers* v. *Richfield Oil Corp.*, 98 Cal.App.2d 667 [220 P.2d 973], cited by appellants, support this contention for the case merely holds that issues such as the proper determination of the employees' status, loss of seniority and other issues raised by the respondent were matters for the arbitrators to decide.

Moreover, the conclusions and judgment herein do not adjudicate the merits of Majorell's lay-off as appellants contend. No order was entered on the finding attacked and it was not necessary to the court's decision. ▮▮▮ If a judgment is supported by the findings on a particular issue, another finding on a different issue is immaterial and may be treated as surplusage. (*Baird* v. *Havas*, 72 Cal.App.2d 520, 523 [164 P.2d 952].)

Appellants finally contend that in a proceeding under Code of Civil Procedure, section 1282, the only questions which the court may consider are whether a contract to arbitrate was in fact made and whether there was a refusal to arbitrate, and that, therefore, the court cannot decide the issue of whether the contract has terminated. In this appellants are clearly wrong. ▮▮▮ As this court said in *Pari-Mutuel etc. Guild* v. *Los Angeles Turf Club, Inc.*, 169 Cal.App.2d 571 at 578 [337 P.2d 575]: "As a general rule, the question of the existence of an agreement to arbitrate and of the scope of the arbitration permissible thereunder are issues which, in the first instance, the code refers to judicial action." ▮▮▮ And in *Drake* v. *Stein*, 116 Cal.App.2d 779 [254 P.2d 613], this court said at page 784: "In any proceeding for the enforce-

ment of a contract for an arbitration of a dispute arising under it, a claim that the contract is invalid or that it has been rescinded places the controversy on the conscience of the court which must then determine the equitable issues raised by the defendant. It is only after a finding has been made that under a written contract of arbitration a party is in default in the performance thereof, that the court will order the parties to the contract to proceed in accordance therewith.''

As part of this contention, appellants insist that in a proceeding under Code of Civil Procedure, section 1282, no findings at all are required nor permissible. This is conclusively answered not only by a reading of the section but by the established principle that '' [w]hen the court in a contested case decides whether or not a claimant has a right to specific performance of a contract to arbitrate, such decision requires findings like any other determination of an equity case. [Citations.] In any event section 1282 contemplates findings by the court.'' (*Trubowitch* v. *Riverbank Canning Co., supra,* 30 Cal.2d 335, 347.)

Judgment and order denying motion to set judgment aside are each affirmed.

Fox, P. J., and Ashburn, J., concurred.