Filed 9/4/25  Watters v. Breja CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANDREW G. WATTERS,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>SIDDHARTH BREJA,<br><br>　　　Defendant and Appellant. | A171728<br><br>(San Mateo County<br>Super. Ct. No. 24-CIV-00660) |

Defendant Siddharth Breja appeals from an order denying his motion to dismiss the complaint of plaintiff and respondent Andrew G. Watters or to compel arbitration.  He contends the trial court erred in ruling that he waived his right to arbitrate by initiating a credit card chargeback that returned amounts he had paid to Watters for attorney fees.  We agree that the court erred and reverse.

## I. FACTS AND PROCEDURAL HISTORY

### A. Attorney-Client Relationship and Fee Dispute

Watters and Breja entered into a legal representation agreement dated May 1, 2023 (LRA), by which Watters rendered legal services for Breja in connection with his "[d]ivorce [t]rial."  Pursuant to the LRA, in addition to paying a $10,000 "retainer," Breja was required to pay upfront a $10,000 "trial deposit."  The LRA stated that the "[t]rial deposit is refundable if the

1

case *settles* at least 10 days before trial (which is June 6–8, 2023)." (Italics added.)

Under the heading of "Arbitration of Fee Dispute," the LRA contained an arbitration clause that stated: "Before resorting to litigation, Attorney and Client shall first attempt to arbitrate any disputes over attorney fees using a fee arbitration program approved by the State Bar of California. Client is advised that fee arbitration is optional for Client but mandatory for Attorney (though the award shall be nonbinding)." (See Bus. & Prof. Code, §§ 6200 et seq. [Mandatory Fee Arbitration Act (MFAA)].)

On May 26, 2023, the trial court continued the trial dates from June 6–8, 2023 to July 17–19, 2023. Later that day, Breja terminated Watters' services by e-mail and requested a refund of his $10,000 trial deposit and any amounts remaining under his retainer.

Approximately 20 minutes later, Watters e-mailed Breja a prebill showing his work on the case. Watters informed him that he was "not entitled to any meaningful amount back." Breja promptly disputed the bill. The next day, Watters e-mailed Breja, denying his request for a refund. Watters described the amount of work he performed and asserted that Breja's excessive communications and attempts to control the litigation were "highly unusual and inappropriate." Suggesting that he had earned all amounts paid upfront as attorney fees, Watters invited Breja to "take [the] matter to fee arbitration, where you'll likely find out that your views are inaccurate and unreasonable."

On May 30, 2023, Breja e-mailed a member of Watters' staff and accused Watters of "fraudulent billing." In response, Watters told Breja, "[d]on't contact us again." When Breja attempted to contact Watters anyway, he received a message that his e-mail was blocked with the notation, "[y]our

2

message has been rejected because we have determined you are harassing us."

B. Breja's Chargeback

On or about June 5, 2023, Breja pursued a chargeback with his credit card company, American Express, to reverse the $10,000 charge for Watters' trial deposit. By e-mail dated June 11, 2023, American Express informed Breja: "We're writing to let you know that, as a result of our investigation, we've credited your account for $10000.00, which will appear on your next statement. [¶] It's important to know that we may accept the response from ANDREW G WATTERS at a later date and review the information they provide. In these situations, we may rebill your account. If that happens, we'll be sure to let you know immediately. If you don't hear from us by August 25, 2023, then you may consider this matter closed."

The parties do not state whether American Express contacted Watters, but it appears that he did not persuade the credit card company that the charge was valid. As Watters later alleged in his complaint, American Express withdrew $10,000 from Watters' IOLTA client trust account, and Watters was unable to contest the chargeback using American Express' website. The withdrawal of the funds and whatever Breja said to prompt it allegedly led Chase Bank to close Watters' IOLTA account. The closure allegedly interfered with the operations of Watters' law firm.

C. Federal Court Litigation

On June 27, 2023, Watters sued Breja in the United States District Court for the Northern District of California (case No. 4:23-cv-03183-HSG). The complaint asserted a claim under a federal statute, as well as claims for fraud, breach of contract, and theft. Breja filed a motion to dismiss the complaint or compel arbitration pursuant to the LRA. On January 18, 2024,

3

the federal court agreed that the complaint did not state a claim for relief under the federal statute. There being no remaining basis for subject matter jurisdiction, the court dismissed the complaint on January 18 without deciding the arbitration issue.

D. State Court Litigation

Watters next filed a complaint in San Mateo County Superior Court on February 6, 2024, asserting causes of action for fraud, breach of contract, breach of the covenant of good faith and fair dealing, conversion, theft and receiving or concealing stolen property, unfair practices, declaratory relief, and injunctive relief. As relevant here, the complaint alleged that Breja fraudulently induced American Express to reverse the charge for the $10,000 trial deposit, that Watters was entitled to that compensation, and that the chargeback disrupted Watters' business.

Breja responded to the complaint by filing a motion to dismiss and to compel arbitration on May 16, 2024, claiming that the causes of action were subject to the arbitration clause in the LRA.

Watters opposed the motion, arguing that Breja's initiation of the credit card chargeback, even though it occurred after the LRA was signed, constituted fraud in the inducement of the arbitration agreement. He also stated that Breja's conduct "waived" his contention that Watters could not resist the arbitration clause's enforcement.

The trial court denied Breja's motion on August 29, 2024. The court concluded that Breja proved the existence of an arbitration agreement and that Watters' fraud argument failed because the chargeback did not pertain to the making of the agreement to arbitrate. However, the court ruled that Breja waived his right to compel arbitration by seeking the chargeback of the trial deposit while knowing that the deposit was not refundable unless the

4

matter settled, as opposed to the trial date being continued.  According to the court, Breja "could not more clearly act inconsistently with the arbitration right than when he intentionally sought the refund of his American Express charges after his e-mail exchange with Mr. Watters on May 26, 2023 and May 27, 2023 . . . instead of making a request to arbitrate. . . .  Thus, the court finds [Breja's] direct contact with American Express, request for, and acceptance of, the refund to which he knew he was not entitled was inconsistent with his right to arbitrate the fee dispute with [Watters]. Accordingly, the court is satisfied that [Watters] has demonstrated [Breja's] waiver of the arbitration clause by a preponderance of the evidence and the court DENIES [Breja's] motion to compel arbitration."  Breja timely appealed.

## II.  DISCUSSION

Code of Civil Procedure section 1281.2 provides that "the [trial] court shall order the petitioner [seeking arbitration] and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists," unless, among other things, "[t]he right to compel arbitration has been waived by the petitioner."  The parties do not dispute that their controversy lies within the scope of the arbitration agreement in the LRA.  The sole question on appeal is whether the court erred in ruling that Breja waived his right to compel arbitration.  There being no dispute about the underlying facts, we review de novo and find that the court erred in so ruling.  (*Quach v. Cal. Commerce Club, Inc.* (2024) 16 Cal.5th 562, 585 (*Quach*).)[1]

_____

[1] Because the trial court found that the parties' dispute was covered by the arbitration agreement in the LRA, we question whether the court should have analyzed the waiver issue under the MFAA, which governs the arbitration of attorney fee disputes, rather than general arbitration

5

A waiver of arbitration rights requires clear and convincing evidence that the party seeking to enforce the arbitration agreement intentionally relinquished the right to do so by words or conduct.  (*Quach, supra,* 16 Cal.5th at pp. 569, 584–585; *St. Agnes Medical Center v. PacifiCare of Cal.* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*), overruled in part on another ground in *Quach, supra*, 16 Cal.5th at pp. 573–575.)  As our Supreme Court recently explained:  "To establish waiver under generally applicable contract law, the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it."  (*Quach,* at p. 584.)  "Its intentional relinquishment or abandonment of the right may be proved by evidence of words expressing an intent to relinquish the right or of conduct that is so inconsistent with an intent to enforce the contractual right as to lead a reasonable fact finder to conclude that the party had abandoned it."  (*Ibid*.)  "The waiver inquiry is exclusively focused on the waiving party's words or conduct; neither the effect of that conduct on the party seeking to avoid enforcement of the contractual right nor that party's subjective evaluation of the waiving party's intent is relevant."  (*Id*. at p. 585.)

Typically, a waiver of the right to compel arbitration arises when a party significantly engages in court proceedings, such as by answering the complaint or engaging in discovery, or unduly delays seeking or starting the arbitration.  (*Quach, supra,* 16 Cal.5th at pp. 586–587; *St. Agnes, supra*, 31 Cal.4th at p. 1196.)

---

principles.  (Bus. & Prof. Code, § 6201.)  But we need not decide the issue. The parties have not raised it, and neither the court nor Watters asserted a waiver theory recognized by the MFAA.  (*Ibid*.)

6

Here, the trial court erred in ruling that Breja waived his right to arbitrate. In the first place, it denied Breja's motion based on a finding of waiver by a preponderance of the evidence. The correct standard is clear and convincing evidence. (*Quach, supra,* 16 Cal.5th at pp. 584–585; cf. *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*) [party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense].) The court's application of the wrong legal standard requires reversal.

Moreover, the evidence did not support a finding of waiver, whether the standard was a preponderance of the evidence or clear and convincing evidence. Breja did not intentionally give up his right to compel arbitration of the dispute by litigating in court or by waiting too long to invoke the arbitration provision. It was Watters, not Breja, who filed the lawsuit. And once Watters sued, Breja immediately sought to compel arbitration. Breja did not answer the complaint, undertake discovery, engage in motion practice, or otherwise participate in the litigation process.

Nor did Watters meet his burden to prove that Breja's efforts to obtain the chargeback from American Express reflected an intent contrary to arbitrating the parties' dispute. (*Quach*, *supra,* 16 Cal.5th at p. 584.) Based on the record, a credit card chargeback is a consumer protection mechanism available to credit card holders under federal law. (See 15 U.S.C. § 1666 et seq. [Fair Credit Billing Act].) It is not litigation. Furthermore, the chargeback process here did not adjudicate who was legally entitled to the amounts reflected in the $10,000 charge. To the contrary, American Express' e-mail to Breja stated that it was crediting Breja's account for $10,000 but also emphasized that it might accept a response from Watters and rebill Breja's account. Moreover, Watters did not establish that the chargeback

7

Breja initiated through American Express resulted in, or would inevitably result in, a binding dispute resolution process inconsistent with arbitration under the LRA. Indeed, at no time during the chargeback process did Breja say that he was not going to arbitrate.

In any event, even filing a lawsuit does not in itself constitute a waiver of arbitration. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 185–188, overruled in part on another ground in *Quach, supra*, 16 Cal.5th at p. 573; see *St. Agnes, supra*, 31 Cal.4th at pp. 1200–1201 [filing a lawsuit did not waive the right to seek arbitration in other litigation between the parties on the same contract].) Merely engaging in the chargeback process, a much less litigious act than filing a lawsuit, should not in itself constitute a waiver of arbitration either.

Watters' arguments to the contrary are meritless. He argues that the trial court correctly found a waiver because Breja admitted conduct that Watters considers fraudulent. But even if Breja admitted fraud, he did not give up his right to arbitrate the claim. Acting fraudulently may give rise to a fraud cause of action, but it does not bar a defendant from seeking to arbitrate that cause of action pursuant to the parties' arbitration agreement. Neither the court nor Watters cited any case holding a waiver under circumstances remotely resembling this case. (See Bus. & Prof. Code, § 6201 [enumerating limited grounds for finding waiver of the client's right to arbitrate attorney fee disputes].)

*St. Agnes* did refer to decisions holding that "the 'bad faith' or 'wilful misconduct' of a party may constitute a waiver and thus justify a refusal to compel arbitration." (*St. Agnes, supra,* 31 Cal.4th at p. 1196.) But the cases *St. Agnes* cited for that proposition, and the cases on which those cases relied, pertained to conduct that directly interfered with the arbitration: delay and

8

bad faith in choosing arbitrators; refusing to proceed with arbitration; or failing to adequately apprise customers of the right to arbitrate. (See *Engalla, supra*, 15 Cal.4th at p. 983; *Davis v. Blue Cross of Northern Cal.* (1979) 25 Cal.3d 418, 425–426; *Local 659, I.A.T.S.E. v. Color Corp. of America* (1956) 47 Cal.2d 189, 196.) None of that occurred here.

Watters further argues that, "rather than seek arbitration as he knew he needed to do, [Breja misled] American Express by filing a fraudulent charge back with them, asserting he had met the express condition for a refund." But Breja had no obligation to seek arbitration at the time he initiated the chargeback.[2] He had the *right* to seek arbitration, and he did seek arbitration when Watters sued. Pursuing the chargeback, whether it was fraudulent or not, did not relinquish the right to adjudicate the dispute in arbitration.

We emphasize that we do not resolve the merits of the allegations of Watters' complaint. We conclude only that Breja's conduct did not constitute a waiver of his right to compel arbitration under the LRA. Because we reverse the order on this ground, we need not and do not decide Breja's alternative argument that the order is inconsistent with the Federal Arbitration Act.[3]

---

[2] The trial court did not find, and Watters did not argue, that Breja waived his right to arbitrate under the MFAA by failing to timely request arbitration after the proper service of a Notice of Client's Right to Fee Arbitration. (See Bus. & Prof. Code, § 6201; State Bar rule 3.501(b).)

[3] Watters asks us to order Breja to reimburse him for costs on appeal because the appeal "has wasted time and resources that could have been better utilized in actually litigating this matter, rather than filing a meritless appeal." The request is denied. Breja filed a request for judicial notice of a nonpublished opinion in *Watters v. Liu* (May 9, 2025, A168766) to show Watters' "misconduct." We deferred ruling on the request pending consideration of the merits. The opinion in that case was not presented to

9

## III.  DISPOSITION

The order is reversed.


CHOU, J.


WE CONCUR.


JACKSON, P. J.
SIMONS, J.


A171728/ *Watters v. Breja*

---

the trial court and is not relevant to the issues in this appeal.  We deny the request for judicial notice.